IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RBAHTDSR, LLC, t/a REHOBOTH BEACH ANIMAL HOSPITAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PROJECT 64 LLC, JOHN M. WIERTEL, and GEOFFREY GRAHAM, <br><br> Defendants. | Civil Action No. 19-1280-RGA |

# REPORT AND RECOMMENDATION

Presently before the Court in this contract dispute is a motion to amend the operative Complaint, filed by Plaintiff RBAHTDSR, LLC ("Rehoboth Beach Animal Hospital" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 15(a) (the "Motion"). (D.I. 12) Defendants Project 64 LLC, John M. Wiertel and Geoffrey Graham (collectively "Defendants") oppose the Motion. (D.I. 16) For the reasons set forth below, the Court recommends that Plaintiff's Motion be GRANTED-IN PART and DENIED-IN-PART.

## I. BACKGROUND

The Court assumes familiarity with and incorporates by reference its March 6, 2020 Report and Recommendation ("March 6 R&R"), in which it granted-in-part and denied-in-part Defendants' motion to dismiss the claims in Plaintiff's original Complaint (the "Motion to Dismiss"). (D.I. 21) The instant Motion was filed on September 24, 2019, (D.I. 12), and was referred to Court for resolution on October 3, 2019, (D.I. 15); briefing on the Motion was completed on November 19, 2019, (D.I. 18). Further relevant facts related to resolution of the Motion will be set out as needed in Section III.

1

## II. LEGAL STANDARDS

Rule 15(a) provides that, other than in certain circumstances where a party may amend a pleading as a matter of course, a party may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule further explains that a court should "freely give leave [to amend the pleadings] when justice so requires." *Id.* In line with the requirements of the rule, the United States Court of Appeals for the Third Circuit has adopted a liberal approach in allowing amendments under Rule 15, in order to ensure that "claim[s] will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990); *see also Aerocrine AB v. Apieron Inc.*, Civil Action No. 08-787-LPS, 2010 WL 1225090, at *7 (D. Del. Mar. 30, 2010). The "factors [that a court should] consider in weighing a motion for leave to amend include . . . whether the amendment is futile." *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, Civil Action No. 11-54-SLR, 2012 WL 2365905, at *2 (D. Del. June 21, 2012) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Aerocrine AB*, 2010 WL 1225090, at *7. The non-movant bears the burden to demonstrate that the proposed amendment should be denied. *See, e.g., Campbell v. Sedgwick Detert, Moran & Arnold*, Civil No. 11-642-ES-SCM, 2013 WL 1314429, at *2 (D.N.J. Mar. 28, 2013) (citing *Foman*, 371 U.S. at 182); *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010).

Defendants challenge the Motion here on the ground that the proposed claims are futile. (D.I. 16) "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). In assessing a challenge to the amendment of claims on the ground of futility, the Court must apply the same standard of legal sufficiency as it does when considering a motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.*; *S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 522 (D. Del. 2010).[1]

## III. DISCUSSION

In its proposed Amended Complaint, (D.I. 13, ex. 2 ("Amended Complaint")), Plaintiff seeks to bring five Counts: breach of contract, (*id.* at ¶¶ 25-31), negligence (pursuant to the Restatement (Second) of Torts § 552, or "Section 552")), (*id.* at ¶¶ 32-42), common law fraud and equitable fraud, (*id.* at ¶¶ 43-51), veil piercing/alter ego, (*id.* at ¶¶ 52-59), and civil conspiracy, (*id.* at ¶¶ 60-62). Defendants argue against amendment as to each Count. Below the Court will analyze each Count in turn.

### A. Breach of Contract (Count I)

The breach of contract allegations against Project 64 in Count I of the Amended Complaint are substantially the same as those in the original Complaint. (*Compare* D.I. 1, ex. A at ¶¶ 24-30 *with* Amended Complaint at ¶¶ 25-31) And in opposing Plaintiff's Motion as to Count I here on futility grounds, Defendants raise the same arguments as they did with their Motion to Dismiss. (*Compare* D.I. 16 at 3-6 *with* D.I. 6 at 7-11 *and* D.I. 11 at 2-6) Accordingly, for the reasons set out in the March 6 R&R, (D.I. 21 at 5-10), the Court recommends that Plaintiff's Motion be granted as to Count I.

### B. Negligence (Count II)

In Count II, Plaintiff brings a claim against Project 64 titled "Negligence"; the claim is actually one for negligent misrepresentation under Delaware law pursuant to Section 552.

---

[1] Despite this, at times both sides ask the Court to consider material/information not attached to or referenced in the Amended Complaint when assessing futility. (D.I. 16 at 13; D.I. 18 at 2-3, 8) The Court declines to do so, as it could not do so in resolving a Rule 12(b)(6) motion. *In re Burlington Coat Factory*, 114 F.3d at 1426.

3

(Amended Complaint at ¶¶ 32-42; D.I. 16 at 6; D.I. 18 at 5) With their Motion to Dismiss, Defendants asserted that Plaintiff had not sufficiently pleaded this Count, because Plaintiff had failed to sufficiently allege that Project 64 was "in the business of supplying information" (a requirement for this type of Section 552 claim). In the March 6 R&R, the Court recommended that the claim not be dismissed; it so concluded because the Complaint contained sufficient facts to indicate that Project 64's role in assisting Plaintiff regarding Plaintiff's to-be-constructed veterinary facility (the "Project") was as a provider of information and advice. (D.I. 21 at 10-15) Important to this conclusion was that Plaintiff had alleged in the Complaint that: (1) Project 64 had assisted it in selecting and evaluating a suitable site for the Project; and (2) the contract-at-issue between the parties (the "Contract") described how Project 64 was to provide "design consultation, management and cost budgeting services[.]" (*Id.* at 13 (internal quotation marks and citation omitted))

In Count II of the proposed Amended Complaint, Plaintiff makes a similar type of negligent misrepresentation claim as it did in its original Complaint (though it adds a number of additional factual allegations regarding that claim). (*Compare* D.I. 1, ex. A at ¶¶ 31-37 *with* Amended Complaint at ¶¶ 32-42) More specifically, Plaintiff alleges that Project 64 was in the business of supplying information regarding design consultation, and that it provided inaccurate and false information to Plaintiff—i.e., that it wrongly advised Plaintiff that the Project could be completed for around $750,000 (the "Total Cost Estimate"). (Amended Complaint at ¶¶ 32-42) And Defendants, who oppose amendment of Count II on futility grounds, raise the same arguments against Count II as they did via their Motion to Dismiss—i.e., that Project 64 is not an "information provider" under Delaware law, by virtue of the fact that the "end product" of the information it provided was a completed structure (here, a veterinary care facility). (*Compare*

4

D.I. 16 at 6-11 *with* D.I. 6 at 11-16 *and* D.I. 11 at 6-8) For the same reasons as set out in the March 6 R&R, the Court rejects Defendants' arguments and recommends that the Motion be granted as to Count II.

C.   **Common Law Fraud and Equitable Fraud (Count III)**

In Count III, Plaintiff brings claims against Project 64, Mr. Wiertel and Mr. Graham for common law fraud and equitable fraud. The Court understands Plaintiff to be grounding its fraud claims in two representations that Mr. Wiertel and Mr. Graham purportedly made: (1) "[Project] 64 employed licensed architects that could prepare drawings and specifications for the Project," and (2) "[Project] 64 employed personnel with the requisite training, education, and experience to serve as design consultants for the Project."[2] (Amended Complaint at ¶¶ 44, 46)

As to the common law fraud claim, Defendants argue that the claim is futile because Plaintiff has failed to plead it with particularity, as required by Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b).[3] The Court agrees. While Plaintiff sufficiently states the "who" of its fraud claim (i.e., it sufficiently identifies Mr. Wiertel and Mr. Graham as the speakers), and—at

---

[2]   Additionally, Plaintiff alleges that "Mr. Wiertel and Mr. Graham falsely represented . . . that the Project *could not* be built within a reasonable approximation of the Total Cost Estimate." (Amended Complaint at ¶ 48 (emphasis added)) The Court cannot understand how this allegation provides a basis for a fraud claim. After all, Plaintiff's overarching theme in the Amended Complaint is that Project 64 and/or its principals (inaccurately) represented that the Project *could* be built within the Total Cost Estimate. (*See e.g., id.* at ¶ 40)

[3]   To satisfy this heightened pleading standard, a plaintiff claiming fraud must allege, at a minimum, the "date, time and place of the alleged fraud" or must "otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Where allegations of fraud are brought against multiple defendants, "the complaint must plead with particularity . . . the [specific] allegations of fraud" applicable to each defendant. *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005); *Hicks v. Boeing Co.*, Civil Action No. 13-393-SLR-SRF, 2014 WL 1284904, at *6 (D. Del. Mar. 21, 2014).

5

least as to the purported misrepresentation about employing licensed architects[4]—sufficiently identifies the "what" (i.e., the nature of the alleged misrepresentation), it fails to identify the "date, time and place of the alleged fraud" (or to "otherwise inject precision or some measure of substantiation"). *Frederico*, 507 F.3d at 200; *see also Hirani Eng'g & Land Surveying, P.C. v. Mehar Inv. Grp., LLC*, Civil Action No. 09-252-RGA, 2012 WL 2914932, at *3-4 (D. Del. July 17, 2012).

As to the equitable fraud claim, while Plaintiff lumps it into the same Count as Plaintiff's claim for common law fraud, the claim is a separate cause of action under Delaware law. *See, e.g., Nikolouzakis v. Exinda Corp.*, Civil Action No. 11-1261-LPS-MPT, 2012 WL 3239853, at *7 (D. Del. Aug. 7, 2012). And a plaintiff claiming equitable fraud must, *inter alia*, sufficiently plead the existence of a "'special relationship between the parties or other special equities, such as some form of fiduciary relationship or other similar circumstances.'" *Kolber v. Body Cent. Corp.*, 967 F. Supp. 2d 1061, 1068 (D. Del. 2013) (quoting *Narrowstep, Inc. v. Onstream Media Corp.*, Civil Action No. 5114-VCP, 2010 WL 5422405, at *13 (Del. Ch. Dec. 22, 2010)).[5] But

---

[4] As to Plaintiff's allegation that Project 64 falsely represented that it employed personnel "with the requisite training, education, and experience to serve as design consultants for the Project," the Court does not believe that this sufficiently articulates (with particularity) the "what" regarding the specific misrepresentation of fact. Indeed, after assessing the relevant allegation, the reader begs for more specificity. What particular type of training, or education, or experience was said to have been needed, or to have been promised? What particular training, education or experience did Project 64's staff actually have that turned out to be less than what was promised?

[5] Additionally, to set out a claim for equitable fraud, a plaintiff must plead facts plausibly alleging the same elements as with a common law fraud claim (the making of a false representation, that the representation was made with an intent to induce the plaintiff to act or refrain from acting, that the plaintiff's action or inaction was taken in justifiable reliance on the representation and the existence of resultant damages), with the exception that an equitable fraud claim also requires only a showing that the misrepresentation was negligently or innocently made, while common law fraud requires instead that the defendant knew that the

6

here, Plaintiff fails to allege any special relationship between it and Defendants. In its briefing, Plaintiff argues to the contrary, asserting that "architect[s], not unlike lawyers and other professionals . . . occupy a special position of trust with their clients." (D.I. 18 at 9) Yet not only does Plaintiff fail to include that allegation in Count III's text, but it also cites to no Delaware case law regarding equitable fraud that supports this proposition. Indeed, to the contrary, the case law suggests that Defendants (who, via Project 64, were parties to an arms' length business transaction with Plaintiff) did *not* owe Plaintiff any "special duty" similar to a fiduciary duty. *See Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 144 (Del. Ch. 2009) (granting judgment on the pleadings and dismissing an equitable fraud claim, and noting that "[t]he parties involved—Airborne and Squid Soap—were counterparties who negotiated at arms' length. Neither occupied a relationship of trust or confidence with respect to the other."); *see also Osram Sylvania Inc. v. Townsend Ventures, LLC*, C.A. No. 8123-VCP, 2013 WL 6199554, at *15 (Del. Ch. Nov. 19, 2013) (same).

Accordingly, Plaintiff's allegations as pleaded regarding Count III could not state a claim of common law or equitable fraud, and so the Court recommends that Plaintiff's Motion be denied as to this Count.

### D.     Veil Piercing/Alter Ego (Count IV)

In Count IV, Plaintiff sets out a stand-alone Count titled "VEIL PEIRCING/ALTER EGO[.]" (Amended Complaint at ¶¶ 52-59) From Plaintiff's briefing, the Court understands that the point of this "Count" is that if Plaintiff obtained a judgment against Project 64 as to its "claims sounding in fraud[,]" (i.e., Counts III and V), but if Project 64 was later found to be

---

misrepresentation was false, or was recklessly indifferent to that fact. *Nikolouzakis*, 2012 WL 3239853, at *7; *Zirn v. VLI Corp.*, 681 A.2d 1050, 1061 (Del. 1996).

7

insolvent, a finding that Project 64 was the "alter ego" of Mr. Wiertel and Mr. Graham would enable Plaintiff to recover against those individual Defendants for Project 64's liability on those claims. (D.I. 18 at 9-10)

Under these circumstances, the Court does not believe that this "alter ego" claim is appropriately pleaded as a separate cause of action. *See Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469 n.10 (D. Del. 2010). Instead, because this alter ego theory appears to be merely intended as a "means of imposing liability on an underlying cause of action[,]" *id.*, facts relating to these allegations should be pleaded as part of the underlying substantive fraud-related counts (i.e., Counts III and V). And since the Court has recommended that the Motion be denied as to those Counts, it recommends that the Motion be denied as to "Count IV" too.

Moreover, and even assuming (as the parties do) that Delaware law applies to the alter ego analysis here,[6] in order for Plaintiff to sufficiently plead facts establishing the potential for alter ego liability, it would have to make a showing as to two elements: (1) that the corporation and its shareholders did not operate as legally distinct entities, and (2) that there has been an element of fraud, injustice or inequity in the use of the corporate form. *See Fidelity Nat'l Info. Servs., Inc. v. Plano Encryption Techs., LLC*, Civil Action No. 15-777-LPS, 2016 WL 1650763, at *4 (D. Del. Apr. 25, 2016) (citing cases). Further to the first of these inquiries (i.e., whether the corporation and its shareholders operated as legally distinct entities), the court should consider if any of following factors have been pleaded: (1) whether the corporation is adequately capitalized; (2) whether the corporation is solvent; (3) whether corporate formalities

---

[6] Project 64 is an Ohio limited liability company, (Amended Complaint at ¶ 3), and there is some authority for the proposition that pursuant to Delaware's choice of law rules, Ohio law should govern the veil piercing analysis under such circumstances. *See In re Washington Mut., Inc.*, 418 B.R. 107, 114 (Bankr. Del. 2009) (citing *Rosenmiller v. Bordes*, 607 A.2d 465, 468 (Del. Ch. 1991)).

were observed (i.e., whether dividends were paid, corporate records kept, or officers and directors functioned properly); (4) whether the controlling shareholder siphoned company funds; or (5) in general, whether the corporation simply acted as a façade for the controlling shareholder. *Id.* (citing cases).

However, as to these corporate separateness factors, here Plaintiff simply alleges in the proposed Amended Complaint that: (1) "[Project] 64 is grossly under-capitalized[,] owning little to no assets[,] and lacks adequate malpractice insurance for a design and architectural firm which it purports to be"; and (2) "[Project] 64 failed and continues to fail to maintain adequate business records, accounts, office space, equipment, etc." (Amended Complaint at ¶¶ 56, 58) This really amounts to little more than a *list* of certain of the relevant factors. In other words, it is as if Plaintiff simply stated "Project 64 is not adequately capitalized" or "Project 64 failed to observe corporate formalities" or "Project 64 has an absence of corporate records." What is lacking is the failure to plead *underlying facts* or to at least nod to *some factual basis* that fleshes out and makes plausible these conclusory statements. The Court concludes that the Motion should be denied as to the Count on this basis too.

### E. Civil Conspiracy (Count V)

In Count V, Plaintiff brings a claim for civil conspiracy against Mr. Wiertel and Mr. Graham. (Amended Complaint at ¶¶ 60-62; *see also* D.I. 18 at 10) Defendants challenge this count on the ground that Plaintiff has failed to allege an "underlying wrong." (D.I. 16 at 17; *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 694 (Del. Super. Ct. 1986) ("Civil conspiracy is not an independent cause of action in Delaware, but requires an underlying wrong which would be actionable absent the conspiracy.")). In response, Plaintiff asserts that the underlying wrongs at issue are its claims of common law fraud and/or equitable fraud, as alleged in Count III. (D.I. 18

at 10) Because the Court has recommended that Plaintiff's Motion as to Count III be denied on futility grounds, it recommends the same as to Count V.[7]

**IV. CONCLUSION**

For the foregoing reasons, the Court recommends that Plaintiff's Motion is GRANTED-IN PART and DENIED-IN-PART. More specifically, the Court recommends that Plaintiff's Motion be GRANTED as to Counts I and II and DENIED as to Counts III, IV and V.[8]

It seems at least possible to the Court that Plaintiff, if given one more chance, could sufficiently amend its pleading to properly allege the common law fraud claim in Count III[9] or the civil conspiracy claim in Count V (and to sufficiently allege the existence of alter ego liability regarding certain Defendants as to those Counts). In light of that, because this is the first time the Court has found these claims to be deficiently pleaded, and because leave to amend should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court recommends that Plaintiff be given leave to file one further amended complaint addressing the deficiencies as to these claims. The Court also recommends that if the District Court affirms its decision herein, Plaintiff be given no more than 14 days to file such an amended complaint.

---

[7] Plaintiff also seeks to have Dr. Timothy Dabkowski joined as a co-Plaintiff, but only "until . . . this court rules . . . whether [] Project 64 . . . entered into the [C]ontract with [Plaintiff] or Dr. Dabkowski individually." (D.I. 13 at 1-3) In the March 6 R&R, the Court concluded that Plaintiff had demonstrated, by a preponderance of the evidence, that Dr. Dabkowski had signed the Contract in his representative capacity (i.e., simply on behalf of Plaintiff), such that Plaintiff had standing to sue as to Count I's breach of contract claim. (D.I. 21 at 7) If the District Court ultimately affirms the Court's recommendation on that ground, the Court understands this would moot Plaintiff's request to add Dr. Dabkowski as a co-Plaintiff. For that reason, the Court recommends that the request be DENIED.

[8] Plaintiff's request for oral argument is DENIED. (D.I. 20)

[9] For the reasons set out above, the Court does not see how Plaintiff could plead a claim of equitable fraud here, and so it does not recommend that the District Court permit amendment as to that claim.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: March 17, 2020

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE